REDMANN, Judge.
An ex-wife appeals from a judgment that annulled her then husband’s 1976 transfer to her by private act of a house then worth $4,500 for “$10 ... and other good and valuable consideration.” The husband also transferred to her the household furnishings, but not the community cash, whose amount is undisclosed. The trial judge reasoned that La.C.C. 1790[1] (prior to its amendment by La. Acts 1978 No. 627 § 3) prohibited contracts between spouses during the marriage. We reverse. C.C. 1790 only prevented interspousal commutative contracts, C.C. 1768, by which each does, gives or promises to do or give something for or to the other. C.C. 1790 did not prevent either simple interspousal donations, which are expressly authorized by C.C. 1743,[2] or givings in payment, C.C. 2446[3] (prior to its repeal by Acts 1978 No. 627 § 5). The deed in this case was a giving in payment in discharge of a natural obligation, a “transfer made by the husband to his wife, even though not separated, [that] has a legitimate cause ...,” C.C. 2446(2).
The transfer was for $10, and thus of course it was not a sale. Just as in the case of “the sale of a plantation for a dollar,” C.C. 2464, the absence of a proportionate price prevents this transfer’s being deemed a sale, although, as 2464 adds, it may be effective (if not otherwise invalidated) as “a donation disguised.” Whatever its true character, our $10 transfer is not a sale but is merely disguised in the form of a sale.
The evidence explains the transfer as a result of (1) the husband’s radical and continuous breach of the marital obligation of fidelity, C.C. 119, by living part-time with another woman even while still living with the wife and (2) the husband’s interest in the wife’s obtaining a divorce swiftly and without bringing the other woman into the proceedings.
The wife testified that the husband had agreed to give her the house and its furnishings if she would get a quick and clean divorce. The husband’s testimony (“I agreed to give her anything and everything.”) in effect corroborates this agreement notwithstanding his protests, as does the fact that he executed a deed reciting *292 $10 “consideration,” transferring the house to the wife. As we view the question on appeal, it is whether this case is within the exception to C.C. 1790 provided by C.C. 2446(2), allowing an interspousal transfer “When the transfer made by the husband to his wife, even though not separated, has a legitimate cause, as the replacing of her dotal or other effects alienated.” We answer that question yes.
We first express doubt that one spouse’s desire for a quick and clean divorce could be “legitimate cause” within C.C. 2446(2). The codal example of “replacing ... effects alienated,” although not a limit on the generality of the expression “a legitimate cause,” suggests the principle that the cause should be a pre-existing cause; otherwise any ordinary sale by husband to wife would come within the exception (and would make it the rule rather than the exception). See Planiol, Civil Law Treatise (La. Law Inst, trans.) 11,1442-3. (We also question whether the other spouse’s fulfilling the desire for a quick, clean divorce could constitute “services” supporting a remunerative donation within C.C. 1523, exempted by C.C. 1526 from C.C. 1536’s requirement of authentic form.)
The fact that justifies characterizing this transfer as supported by “a legitimate cause” within C.C. 2446(2) is the husband’s breach of the marital obligation previously described. Policy reasons prevent one spouse’s suing the other for damages for breach of marital obligations and for that reason the obligation to repair the damage thus caused does not rise to the level of a legally enforceable “civil obligation” within C.C. 1757. But we reason that the obligation of one spouse to make reparation to the .other for this kind of damage is among the natural obligations defined by C.C. 1758(1): “Such obligations as the law has rendered invalid ... for some reason of general policy, but which are not in themselves immoral or unjust.” The natural obligation cannot be enforced by lawsuit, but “No suit will lie to recover what has been paid, or given in compliance with a natural obligation,” C.C. 1759. The husband in our case evidently recognized the injury he had caused the wife and felt the natural obligation to make reparation (in addition to which he wanted a quick and clean divorce that would not involve the other woman, whom he shortly thereafter married). Most important, he in fact did discharge his natural obligation to make reparation by executing the deed to the house. C.C. 1759 prevents his suing to get it back.
Finally we note that the husband also demanded annullment of his transfer to the wife of some land worth about $750 in another state. We expressly disclaim jurisdiction in the courts of Louisiana either to annul or to confirm that transfer.
Reversed; suit dismissed at plaintiff’s cost.

. Besides the general incapacity which persons of certain descriptions are under, there are others applicable only to certain contracts, either in relation to the parties, such as a husband and wife, tutor and ward, whose contracts with each other are forbidden; or in relation to the subject of the contract, such as purchases, by the administrator, of any part of the estate which is committed to his charge, and the incapacity of the wife, even with the assent of the husband, to alienate her dotal property, or to become security for his debts. These take place only in the cases specially provided by law, under different titles of this Code.

. Married persons can, by marriage contract, make to each other reciprocally, or the one to the other, what donations they think proper, under the modifications hereafter expressed.

.A contract of sale, between husband and wife, can take place only in the three following cases:
1. When one of the spouses makes a transfer of property to the other, who is judicially separated from him or her, in payment of his or her rights.
2. When the transfer made by the husband to his wife, even though not separated, has a legitimate cause, as the replacing of her dotal or other effects alienated.
3. When the wife makes a transfer of property to her husband, in payment of a sum promised to him as a dowry.
Saving, in these three cases, to the heirs of the contracting parties, their rights, if there exist any indirect advantage.